UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dillan Lucus Keeney,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendants. | No.  1:25-cv-00467-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 17, 21) |

### I.    Introduction

On April 23, 2025, Plaintiff Dillan Keeney filed a complaint in this Court seeking judicial review of a final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits (SSDI) and Supplemental Security Income (SSI) pursuant to Titles II and XVI, respectively, of the Social Security Act.

### II.    Procedural Background

On October 23, 2018, Plaintiff applied for SSDI and SSI alleging a disability onset date of January 1, 2015.  AR 262; 272.  Plaintiff's applications were denied initially on February 19, 2019, (AR 117–18), and on reconsideration on July 2, 2019 (AR 157–58).  The ALJ held a hearing on October 6, 2020.  AR 43–83.  The ALJ issued an unfavorable decision on November 30, 2020.  AR 12–42.  The Appeals Council declined review on April 27, 2021.  AR 1–6.  Plaintiff filed a

complaint in this Court, and on May 24, 2022, the matter was remanded to the Agency pursuant to the parties stipulation.  AR 2338.

The ALJ held a second hearing on April 11, 2023.  AR 2205–45.  The ALJ issued an unfavorable decision on November 1, 2023.  AR 2170–2204.  Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

**III.     The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience,

2

engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2015.  AR 2176.  At step two, the ALJ found that Plaintiff had the following severe impairments: left shoulder osteoarthritis and tear, status-post total arthroscopy; cyclical vomiting syndrome; cannabis hyperemesis syndrome; cannabis use disorder; bilateral carpal tunnel syndrome; irritable bowel syndrome (IBS); chronic kidney disease; cervical spine degenerative disc disease; bipolar/major depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder (PTSD).  AR 2176.  The ALJ also found at step two that Plaintiff had the following impairments which were determined to be non-severe as they caused no more than minimal restriction in the claimant's ability to perform basic work activities: asthma and a history

3

of rhabdomyolysis.  AR 2176.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 2176–78.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 404.1567(b) and 416.967(b) with the following limitations:

> he can never climb ladders, ropes, or scaffolds. He can frequently balance as that is defined in the Selected Characteristics of Occupations (SCO). He can frequently climb ramps and stairs, stoop, crouch, kneel, and crawl. He can occasionally raise the left non-dominant upper extremity to shoulder level and never reach overhead on the left. He can frequently handle, finger, and feel bilaterally. He can have no exposure to dampness or to extreme cold as well as no moving mechanical parts and unprotected heights. There should be no exposure to excessive vibration. There should be a bathroom on site. He can understand, remember, and carry out simple instructions and perform work not requiring a specific production rate, such as assembly line work or work requiring hourly quotas. He cannot perform tandem tasks or teamwork where one production step is dependent upon a prior step. He can have occasional changes in a routine work setting. He can occasionally interact with coworkers and supervisors, but he can have no interaction with the public. Further, with substance use, he would be off task approximately 10% of the workday.

AR 2178 (emphasis added).

At step four, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a handyman (medium exertion, performed at heavy); a welder's helper (heavy exertion); and a cook's helper (medium exertion).  AR 2180.  At step five, in reliance on the Vocational Expert's (VE) testimony, the ALJ found that with the substance use disorder[1] Plaintiff was unable to perform any jobs existing in significant numbers in the national economy.  AR 2181.

The ALJ then considered whether Plaintiff would be disabled absent the substance use disorder.  In so doing, the ALJ arrived at the same light exertional RFC and attendant limitations but omitted the limitation concerning off task behavior 10% of the workday. At steps four and five the ALJ found that Plaintiff would still be unable to perform his past work with or without the

---

[1] Pursuant to 20 C.F.R 416.935, the ALJ is to determine whether a substance use disorder is a material factor contributing to disability, i.e. whether the claimant's other impairments would still be disabling absent the substance abuse disorder.

4

substance use disorder, but importantly that without the substance use disorder Plaintiff would be able to perform jobs existing in significant numbers in the national economy, namely: inserter; marker; and mail clerk. AR 2191–92.

Accordingly, the ALJ found that the substance use disorder was a contributing factor material to the determination of disability under 20 C.F.R 416.935, and that Plaintiff would not be disabled absent the substance use.  Accordingly, the ALJ found Plaintiff was not disabled under the Act at any time since his alleged disability onset date of January 1, 2015.  AR 2192.

### V.       Plaintiff's Testimonial Evidence

Plaintiff testified that his health worsened since the previous application. He testified that he can't take any medications, that he is always vomiting or constipated, that he's had upwards of 30 gastroenterology and ER visits, that he uses the bathroom 8 to 12 times a day for 15 to 20 minutes each, that cyclical vomiting starts and persists upwards of 6-8 hours, and that he has anxiety upon waking.

He further testified that when he cannot keep anything down, including medication, his anxiety increases,   to having a sudden need for the bathroom and accidents occurring while in public,  that sleeping and lifting are significantly limited due to shoulder pain, that he cannot reach overhead or forward with his left extremity, nor can he do chores due to pain and fatigue, that he is socially isolated due to pain, that  he does not go out by himself, that he goes at most 3 months without marijuana, that  marijuana helped for a while and was the only way for him to eat and  that his most recent 3-month period of abstinence was summer of 2022.  AR 2205–45.

### VI.      Issues Presented

Plaintiff asserts two claims of error: 1‑ "The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations." 2‑ "The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints."

### A.    Medical Opinions

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

6

or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

## 2. **Analysis**

### a. **Dr. Portnoff**

On January 12, 2019, Plaintiff attended a consultative psychological examination conducted by Dr. Portnoff. AR 1221–25. Plaintiff's chief mental health complaints were bipolar disorder, left shoulder injury rhabdomyolysis, and IBS. AR 1221. Plaintiff reported a history of manic episodes that last 3 to 6 days, panic attacks, sleep disturbance and depressive episodes. Id. He also reported 2 previous hospitalizations for mania in 2009 and 2010, the latter of which lasted 2 weeks. Id.

Plaintiff reported other potential contributors to his mental health problems, including: glaucoma, car accident with rollover, seven concussions from MMA fighting (mixed martial arts), frequent emesis, chronic left shoulder pain post-surgical repair, rhabdomyolysis, and chronic insomnia with daytime incomplete auditory and visual hallucinations. AR 1222.

Plaintiff further reported a history of arrests and incarceration most recently in 2013 (for domestic abuse as later noted by Dr. Arnold below), has a remote history of alcohol abuse, that he last worked in construction, that he does not need help bathing, dressing, grooming, can travel alone, manage money and prepare food for himself. Id.

Dr. Portnoff's examination findings reflect the following: adequate concentration, persistence or pace; fair eye contact; mild psychomotor acceleration, thought process was moderately rambling; thought content was appropriate; denied suicidal ideation; denied hallucinations; affect was moderately labile, tearfully depressed, anxious, then bright; he was fully oriented; in terms of memory his immediate and delayed recall of 3 unrelated words was intact; fund of knowledge was intact; couldn't perform a simple calculation (subtracting 65 cents from a dollar); social judgment was adequate; and insight was adequate. Id. at 1223–24.

Dr. Portnoff diagnosed "Bipolar I Disorder, Most Recent Episode Mixed, Mild to Moderate," stating that Plaintiff's prognosis was fair with appropriate treatment. He opined that Plaintiff had no limitations in his ability to: 1- perform simple and repetitive tasks; 2- accept instructions from supervisors; and 3- his ability to work on a consistent basis without special or

7

additional instruction due to psychiatric problems.  Id.

Dr. Portnoff further opined that Plaintiff was mildly limited in his ability to perform detailed and complex tasks,  and moderately[2] limited in his ability to maintain regular attendance in the workplace from a psychological standpoint. Finally, Dr. Portnoff opined that Plaintiff was markedly limited in his ability to: 1- interact with coworkers and the public due to current mixed bipolar disorder; 2- complete a normal workday or workweek without interruptions from a psychiatric condition due to mood symptoms; and 3- deal with the stress encountered in a competitive work environment due to his manic-depressive symptoms.  AR 1225.  The ALJ addressed the opinion as follows:

> A capacity for simple, repetitive tasks is persuasive as this is generally supported by the psychologist's exam in which moderate rambling was noted. However, the marked limitations are not persuasive as they are not supported by that exam. Contrary to that severity, the claimant demonstrated adequate concentration, persistence, and pace with only mild psychomotor acceleration. He had fair eye contact and moderately pressured, but not loud, speech. Despite the rambling, he remained coherent with appropriate thought content. Dr. Portnoff also observed moderate lability with tearfulness and anxiousness, but also a bright affect (Exhibit 6F/4). Moreover, the marked limitations are not consistent with treatment notes between 2020 and 2022 documenting admissions of a stable mood with overall effective medication management as well as his reports of activities, including caring for his infant child and teaching Sunday school at church (See e.g., Exhibit 27F; 52F/2, 24, 27)

Plaintiff disagrees with the ALJ's reasoning explaining:

> The ALJ noted that he found these marked limitations 'not consistent with treatment notes between 2020 and 2022 documenting admissions of a stable mood with overall effective medication management as well as his reports of activities, including caring for his infant child and teaching Sunday school at church.' Ar. 2190. The ALJ's explanation provides absolutely no clarity or insight into how he rendered his determination and cannot be found to provide the requisite substantial evidence.

[2] "Moderate" mental limitations are not per se disabling.  See, e.g. McLain v. Astrue, 2011 WL 2174895, *6 (C.D. Cal. 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); Rose M. E. v. Saul, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of  Ability to do Work-related Activities (Mental)).

However, contrary to Plaintiff's disagreement with the ALJ regarding Plaintiff's activities, the ALJ's discussion was topical and reasonably self-explanatory.  As to the alleged marked limitations in interacting with coworkers and the public as opined by Dr. Portnoff, the ALJ's notation that Plaintiff was able to teach Sunday school is relevant.

The ALJ also found Dr. Portnoff's opinion was unsupported by his own examination and inconsistent with the broader record.  Plaintiff disputes both findings and explains as follows:

> First, as to the ALJ's notation that the opinions were not well-supported or consistent with the record due to numerous benign findings, it is important to note that the ALJ did not provide any elucidation regarding the inconsistencies, what evidence she relied upon, or even provide any citations to the longitudinal record to support this assertion. This blanket statement is wholly unsupported and utterly fails to craft a logical bridge from the evidence to the ALJ's conclusion.
> . . .
>
> The ALJ only cited to 36 pages of evidence. Ar. 2190 (citing to exhibit 27F and three pages of 52F). However, these pages do not provide the overwhelming support that the ALJ claimed. Rather, although the ALJ stated that the evidence showed only benign objective findings, at Ar. 2979-3002, examination revealed Plaintiff had an abnormal mood. As such, the citations that the ALJ provided did not actually provide any of the support that the ALJ claimed it did. 'The ALJ is required to conduct a more comprehensive analysis of the medical opinion in order to discredit it, rather than cherry-pick evidence to characterize the entire opinion as inconsistent.'
>
> MSJ at 5–6.

To begin, this explanation largely ignores the ALJ's finding as to the supportability, or lack thereof, of Dr. Portnoff's opinion when it is compared to Dr. Portnoff's own examination findings.  See 20 C.F.R. § 416.920c(c)(1) (explaining that, as to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." (emphasis added).  When considering the supportability and consistency of a medical opinion, the ALJ looks not just to Plaintiff's self-reported activity level and the contents of the broader

9

longitudinal record, but also to the evidence and explanations presented by the author of the opinion.

The ALJ explained:

A capacity for simple, repetitive tasks is persuasive as this is generally supported by the psychologist's exam in which moderate rambling was noted. However, the marked limitations are not persuasive as they are not supported by that exam. Contrary to that severity, the claimant demonstrated adequate concentration, persistence, and pace with only mild psychomotor acceleration. He had fair eye contact and moderately pressured, but not loud, speech. Despite the rambling, he remained coherent with appropriate thought content. Dr. Portnoff also observed moderate lability with tearfulness and anxiousness, but also a bright affect (Exhibit 6F/4).

This explanation by the ALJ appropriately noted that Dr. Portnoff's own examination found that Plaintiff had adequate concentration, persistence and pace; fair eye contact; moderately rambling and pressured speech but appropriate in volume; he remained coherent; and he displayed bright affect despite moderate lability with tearfulness and anxiety—nearly all of which appear to undermine Dr. Portnoff's opinion.

Although these findings may not necessarily describe an individual with exceptionally high social functioning and intrapersonal skills, the ALJ did not wholly ignore or fail to acknowledge the existence of some of Plaintiff's social interaction limitations. Rather, the RFC specified "He cannot perform tandem tasks or teamwork . . . He can occasionally interact with coworkers and supervisors, but he can have no interaction with the public." AR 2178. This limitation is more than an adequate and reasonable encapsulation of Plaintiff's difficulties with social interaction even if the ALJ failed to fully embrace Dr. Portnoff's opinion that Plaintiff's social interaction limitations were marked.

Next, Dr. Portnoff opined that Plaintiff was markedly limited in his ability to complete a normal workday or workweek without interruptions from a psychiatric condition due to mood

symptoms.[3]  Again, as the ALJ noted, this limitation was unsupported by Dr. Portnoff's own examination findings of adequate concentration, persistence and pace with only mild psychomotor acceleration; fair eye contact and moderately pressured but not loud speech[4];  and despite some rambling, Plaintiff remained coherent with appropriate thought content.  In sum, substantial evidence does support the ALJ's conclusion that Plaintiff was not markedly limited in his ability to persist through a workday/workweek without interruptions from mood symptoms.

Moving past the inconsistency of Dr. Portnoff's opinion with his own clinical findings, the ALJ also found the opinion to be inconsistent with the broader record.

Plaintiff's argument follows:

First, as to the ALJ's notation that the opinions were not well-supported or consistent with the record due to numerous benign findings, it is important to note that the ALJ did not provide any elucidation regarding the inconsistencies, what evidence she relied upon, or even provide any citations to the longitudinal record to support this assertion. This blanket statement is wholly unsupported and utterly fails to craft a logical bridge from the evidence to the ALJ's conclusion.
. . .

The ALJ only cited to 36 pages of evidence. Ar. 2190 (citing to exhibit 27F and three pages of 52F). However, these pages do not provide the overwhelming support that the ALJ claimed. Rather, although the ALJ stated that the evidence showed only benign objective findings, at Ar. 2979-3002, examination revealed Plaintiff had an abnormal mood. As such, the citations that the ALJ provided did not actually provide any of the support that the ALJ claimed it did. 'The ALJ is required to conduct a more comprehensive analysis of the medical opinion in order to discredit it, rather than cherry-pick evidence to characterize the entire opinion as inconsistent.'

MSJ at 5–6 (emphasis added).

Notwithstanding Plaintiff's argument to the contrary, it is actually fairly clear as to what evidence the ALJ relied upon.   As Plaintiff himself explains, the ALJ relied upon 36 pages

---

[3] Dr. Arnold identified the same limitation at a subsequent consultative examination discussed below.
[4] This finding is not particularly relevant to the ability to complete a workday/workweek without interruptions from mood symptoms.

collectively from Exhibits 27F and 52F.

Additionally, the ALJ did not state that the examinations therein were "overwhelmingly" benign, nor did the ALJ state that they were "only benign."   The ALJ only stated that the marked limitations were "not consistent with treatment notes between 2020 and 2022 documenting admissions of a stable mood with overall effective medication management . . ."

Further, as to Plaintiff's contention that the ALJ's cited records "did not actually provide *any* of the support that the ALJ claimed it did" (emphasis added. Id), is belied by the fact that the examinations in those cited records contained significantly more benign findings than abnormal ones, including with respect to mood.  (See e.g., Exhibit 27F; 52F/2, 24, 27).  To this point a detailed parsing of the records from Plaintiff's psychiatric treatment at KingsView Counseling Services for King's County is warranted as follows.

The 1st progress note in Exhibit 27F is dated August 24, 2022 (AR 2971–76).[5]   The mental status examination (MSE) findings from that record were as follows: 1- affect: appropriate; 2- mood: normal; 3- Appearance: well groomed; 4- motor activity: calm; 5- thought process: intact; 6- hallucinations: none; 7- delusions: none;  8- memory: intact; 9- speech: normal; 10- judgment: intact; 11- insight: intact; 12- behavior: friendly; 13- appetite: poor; 14- sleep: terminal insomnia; 15- suicidal ideation: no; 16- homicidal ideation: no; 17- orientation: fully oriented; 18- intellectual functioning: average; 19- attention span: intact; 20- general fund of knowledge: adequate.  AR 2973–76.  Significantly, of the 20-part MSE, 18 findings were benign and only 2 (appetite and sleep) were abnormal.  These two abnormalities however do not support marked limitations in mental functioning, and Plaintiff does not contend otherwise as the words "insomnia," "sleep," and "appetite" do not appear in Plaintiff's brief.

---

[5] This is the first exam that appears in the Exhibit 27F, but it is not the first chronologically. However, the exams are chronological from this point on.

12

As to the 2nd progress note in Exhibit 27F dated August 26, 2020 (AR 2978): <u>mood was anxious and depressed;</u> he was fully oriented with normal memory and attention; no hallucinations reported; there was no suicidal ideation, homicidal ideation, or delusions; behavior was cooperative; insight was fair; and judgment was fair.  AR 2979.  Even though mood was anxious and depressed, the MSE was otherwise normal.

As for the 3rd progress note in Exhibit 27F, dated October 13, 2020 (AR 2980):  Speech was normal; mood was euthymic (normal); he was fully oriented; memory was normal; attention was normal; hallucinations were denied; there was no suicidal ideation, homicidal ideation, or delusions; behavior was cooperative; insight was fair;  and judgment was fair.  AR 2980–81.  Here, all findings were normal.

As to the 4th progress note, dated December 20, 2020 ( AR 2982), all MSE findings were normal, including euthymic mood.  Id.

Again, as to the 5th progress note dated January 19, 2021 (AR 2984), all MSE findings were normal.  Id.

As to the 6th progress note dated March 16, 2021 (AR 2986), MSE findings were unchanged, all were normal.  Id.

The 7th progress note dated June 14, 2021 (AR 2988), the MSE findings were unchanged; all were normal.  Id.

The 8th progress note dated January 5, 2022  (AR 2991), the MSE findings were unchanged, all were normal.  Id.

Plaintiff was a "no show" for his next appointment on March 28, 2022.  AR 2992.

In the 9th progress note dated April 12, 2022 (AR 2993), the only abnormalities noted were a reactive affect and congruent mood, though mood was also noted as euthymic but tired.  AR 2993–94.

13

Plaintiff was a "no show" for his next appointment on July 5, 2022.  AR 2995.

In the 10th progress note dated July 27, 2022  (AR 2996),   MSE findings were unchanged. The only abnormalities noted were a reactive affect and congruent mood, though mood was also noted as euthymic.  AR 2996–97.

The 11th progress note is dated October 18, 2022.  AR 2999–3000.  MSE findings were unchanged. The only abnormalities noted were a reactive affect and congruent mood, though mood was also noted as euthymic.  Id.

The March 21, 2023 "informational note" reflects a medication adjustment but no other commentary.  AR 3001.

The 12th progress note is dated March 22, 2023.  AR 3002–03.  MSE findings were unchanged except for mood which was depressed rather than euthymic.  Id.

Moving onto Exhibit 52F/2, 24, 27.

Exhibit 52F/2 (AR 4043) is a duplicate of the August 24, 2022, examination as noted above in Exhibit 27F at AR 2971-76. It was a 20-part MSE with 18 normal findings and 2 abnormal findings stating that appetite was poor and that sleep was reflected as "terminal insomnia.".  AR 4045–47.

Exhibit 52F/24 (AR 4064) is a duplicate copy of the same March 28, 2022 "no show" discussed above.

Exhibit 52F/27 (AR 4068) is a duplicate copy of the same July 27, 2022, visit discussed above.  The only abnormalities noted were a reactive affect and congruent mood, though mood was also noted as euthymic.  AR 4068–69.

As to Plaintiff's argument that "examination revealed Plaintiff had an abnormal mood" (MSJ at 6), it is true that some examinations did show abnormal mood, for instance : 1-the 2nd MSE cited above noting mood was anxious and depressed  (AR 2978–79);  2-the 9th, 10th, the11th

14

MSEs (cited above) noting a reactive affect and congruent mood while at the same time noting it was also euthymic (AR 2993–3000);  and 3- the  12th MSE (cited above) showing depressed mood.  Importantly however, the remaining 7 of 12 examinations showed normal mood.

Finally, in regard to Dr. Portnoff's opinion that Plaintiff was markedly limited in his ability to <u>deal with the stress</u> encountered in a competitive work environment, the RFC did reflect that Plaintiff could perform simple job instructions.  Courts have held that a limitation to simple and routine tasks/instructions---while not necessarily all encompassing--- <u>at least encompasses low stress tolerance</u>.  <u>See</u>, <u>e.g.</u>, <u>Henry v. Colvin</u>, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (simple tasks encompasses low stress tolerance); *Keller v. Colvin*, No. 2:13-cv-0221-CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (simple, repetitive tasks "appropriately captured" physician's opinion that claimant required "low stress settings")).

Thus, it is not clear what changes to the RFC Plaintiff would propose to better account for his allegedly marked low stress tolerance-- and this is true even if such a limitation was warranted by the evidentiary record, which it is not.

### b.    Dr. Arnold

On November 2, 2021, Plaintiff attended an additional psychiatric consultative exam with Dr. Arnold, Psy.D.  AR 3478–82.  Plaintiff's chief complaint was depression and bipolar disorder.  Plaintiff reported that his symptoms occur daily and are mild to moderately severe, that he had a history of 2 hospitalizations for suicidal ideation with no plan (AR 3749), that he was married and had 5 children with 5 different mothers and was currently residing with his parents and his spouse along with their 11-week-old daughter  (AR 3479),  that he had been arrested in 2015 and convicted for Domestic Violence and was sentenced to time served with 12 months' probation  (AR 3479–80), and that his symptoms impacted daily living due to inability to concentrate, racing thoughts and insomnia.  As to ADLs, Dr. Arnold noted as follows:

15

> The claimant denied having limitations with daily self-care and denied difficulties with independent living, shopping, or maintaining his ADLs. Moreover, the claimant explained he did not require help with preparing meals or doing light household chores. Claimant is able to make change at the store. The claimant spends an average day doing, helping with his daughter, and maintaining the household chores. AR 3480.

Dr. Arnold's mental status examination noted the following: Plaintiff was casually dressed with good grooming; attitude was cooperative; motor activity was normal; eye contact was good; speech was normal; sensorium was alert; he was fully oriented; intelligence was intact; attention was impaired in that he was able to recite 5 digits forward but could not do so in reverse; concentration was adequate in that he made no errors spelling "world" forward and backward and he could complete serial 3's adequately; fund of knowledge was adequate for current events; memory was adequate in that he recalled 3 out of 3 words after a brief delay; abstraction, proverb interpretation, simple calculations, judgment and insight were all intact; mood was anxious; affect was congruent with mood; he denied suicidal ideation; thought process was intact, linear, and logical; thought content was unremarkable and hallucinations were denied.

Dr. Arnold's diagnostic impressions were: 1- major depressive disorder, mild, with anxious distress; and 2- unspecified bipolar disorder.  AR 3481.

As for the functional assessment, Dr. Arnold opined that   Plaintiff was **moderately**[6] limited in his ability to: 1- understand, remember, and perform simple written and oral instructions; 2- maintain regular attendance in the workplace; 3- perform work activities on a

---

[6] "Moderate" mental limitations are not per se disabling.  See, e.g. McLain v. Astrue, 2011 WL 2174895, *6 (C.D. Cal. 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

consistent basis; 4- perform work activities without special or additional supervision; 5- accept instructions from supervisors; 6- interact with coworkers and with the public;  and 7- deal with the usual stresses encountered in competitive work environment.

Dr. Arnold also found that Plaintiff was **markedly** limited in his ability: 1- to understand, remember, and perform complex written and oral instructions; and 2- to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition.

Dr. Arnold stated after each of the above listed limitations that they were attributable to "cognitive deficits associated with a mood disorder."  AR 3481–82.

The ALJ addressed the opinion as follows:

> Thereafter, in November 2021, P. Arnold, Psy.D., opined moderate limitations as to performing simple instructions, maintaining regular attendance, and performing work activities consistently and without special or additional supervision. Dr. Arnold also noted moderate limitations as to accepting instructions from supervisors and interacting with coworkers and the public as well as dealing with the usual stresses met in the competitive work environment. Dr. Arnold additionally opined marked limitations as to complex instructions and completing a normal workday/week without interruptions resulting from a mental impairment (Exhibit 40F/5-6). Apart from the marked limitation as to completing a normal workday/week, the undersigned finds Dr. Arnold's overall medical opinion of moderate severity is persuasive. This is supported by his contemporaneous exam in which impaired attention was noted as well as adequate concentration and memory (Exhibit 40F/4). During such time, the claimant also had an unremarkable, cooperative demeanor, but the moderate severity in social functioning adequately accounts for a history of a bipolar disorder with depression and anxiety as well as PTSD. However, as with Dr. Portnoff's medical opinion, the marked severity is not consistent with treatment notes between 2020 and 2022 documenting admissions of a stable mood with overall effective medication management as well as his reports of activities, including caring for his infant and teaching Sunday school among other activities (See e.g., Exhibit 27F; 52F/2, 24, 27).

AR 2190.

As to Dr. Arnold's opinion that Plaintiff is markedly limited in understanding, remembering and performing complex written and oral instructions, this is essentially a moot point as the RFC does not require performance of complex instructions, but rather requires only simple ones.

17

As to Dr. Arnold's opinion that Plaintiff is <u>markedly</u> limited in completing a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition, that same limitation was also identified by Dr. Portnoff and as discussed above, and equally applicable here,  is inconsistent with the record  Specifically, the KingsView psychiatric records the ALJ cited from 2020-2022 noted only a few mood abnormalities during 5 of the 12 examinations and 1 instance of poor appetite and terminal insomnia. Otherwise the findings were normal regarding appearance, motor activity, thought process, memory, speech, judgment, insight, behavior, orientation, intellectual functioning, attention span,  general fund of knowledge, the absence of hallucinations, delusions and suicidal/homicidal ideation (not all of which were assessed at each visit, but the findings were invariably normal when they were assessed).  See AR 2971–3003; AR 4043–47; 4064–69.

In sum, the ALJ's decision to reject the <u>marked</u> limitations identified by both Drs. Portnoff and Arnold is supported by substantial evidence and are well grounded in the required regulatory considerations of supportability and consistency.

### B.    Subjective Complaints

#### 1.    Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining

18

the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, Although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis: Waiver

Defendant argues that Plaintiff has waived this issue due to a failure to argue with any specificity or supporting facts.

Indeed, Plaintiff does not describe his subjective allegations, or specify whether he is challenging the ALJ's assessment of his subjective statements as they apply his physical or mental impairments. Nor does Plaintiff explain what specific subjective allegations were improperly evaluated by the ALJ and how any specific error was harmful.

By failing to argue specifically how the ALJ purportedly erred, Plaintiff has waived a challenge to the ALJ's assessment of the subjective evidence. The Ninth Circuit has explained that the court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review ... issues which are argued specifically and distinctly in a party's opening brief."). Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003).

Similarly in Lewis, this court explained that a plaintiff must specifically dispute the conflicts identified by the ALJ, lest the issue be waived.  See Lewis v. Comm'r of Soc. Sec., No. 121CV01243ADASAB, 2023 WL 2182464, at *12 (E.D. Cal. Feb. 23, 2023) report and

recommendation adopted, No. 121CV01243ADASAB, 2023 WL 3794402 (E.D. Cal. June 2, 2023). Likewise, in Carlos, this Court explained that the burden is on Plaintiff to specifically address the ALJ's reasoning, rather than generally assert that the ALJ's reasoning was inadequate. See Carlos v. Comm'r of Soc. Sec., No. 1:21-CV-00517-SAB, 2023 WL 1868870, at *13 (E.D. Cal. Feb. 9, 2023) ("Because Plaintiff does not address the ALJ's other reasons for discounting her testimony, she has waived those arguments on appeal."); see also  Villafan v. Comm'r of Soc. Sec., No. 1:17-CV-01229-SAB, 2018 WL 2734914, at *8 (E.D. Cal. June 5, 2018) ("Although Plaintiff argues that the ALJ made insufficient credibility findings, she has not challenged any specific finding made by the ALJ. Therefore, Plaintiff has waived any challenge to the specific credibility findings by failing to raise them in her opening brief.").

Plaintiff's argument here lacks a meaningful discussion of facts unique to this case. Here, Plaintiff neither drafted an initial factual summary nor a summary of his hearing testimony. Rather, at the outset of the argument section, Plaintiff simply states that pertinent facts will be incorporated into the analysis below. MSJ at 4.  Although this is true to some extent with Plaintiff's first claim-- the opinion evidence--it certainly was less so as to Plaintiff's second claim of error regarding subjective complaints. To illustrate, while page 9 lines 3 to 21 summarizes applicable law (MSJ at 9), page 9 lines 22 to 25 states only the following:

> The ALJ acknowledged Plaintiff's alleged limitations due to his conditions. Ar. 2183. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Ar. 2184
>
> Id.

This quoted material however is not factually unique to this case, rather it's the ALJ's boilerplate introductory language at the outset of the analysis and as such is not helpful to addressing Plaintiffs second claim of error.

Another illustration is Plaintiff's argument that "The ALJ in this matter offers no finding or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations." MSJ

20

at 10, lines 8–9 (emphasis added).  However, Plaintiff does not explain which of his statements support limitations, nor what limitations if any his statements support, whether they be physical, mental, or otherwise, and in what respect…attention span, irritability, social anxiety, ability to follow instructions, emotional instability, and so forth.

Finally, included in the roughly 4,000 page administrative record in this case is a litany of impairments potentially at issue along with an equal number of statements about Plaintiff's impairments.  Although parsing that record is certainly not an enviable task, it is Plaintiff's obligation, not that of the Court or Defendant, to initially comb through that record and direct the Defendant and Courts attention to them.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").  As a result of Plaintiff's not having meaningfully done so, the Court should find that this issue has been waived.

### 3.   **Analysis: Merits**

Even if this issue is not waived, the RFC nonetheless sufficiently accounts for Plaintiff's subjective testimony, and to the extent the RFC does not incorporate Plaintiff's subjective testimony the omission is justified as explained below.

The following is the first RFC which took into consideration Plaintiff's substance use:

he can never climb ladders, ropes, or scaffolds. He can frequently balance as that is defined in the Selected Characteristics of Occupations (SCO). He can frequently climb ramps and stairs, stoop, crouch, kneel, and crawl. He can occasionally raise the left non-dominant upper extremity to shoulder level and never reach overhead on the left. He can frequently handle, finger, and feel bilaterally. He can have no exposure to dampness or to extreme cold as well as no moving mechanical parts and unprotected heights. There should be no exposure to excessive vibration. There should be a bathroom on site. He can understand, remember, and carry out simple instructions and perform work not requiring a specific production rate, such as assembly line work or work requiring hourly quotas. He cannot perform tandem tasks or teamwork where one production step is dependent upon a prior step. He can have occasional changes in a routine work setting. He can occasionally interact with coworkers and supervisors, but he can have no interaction with the public. Further, with substance use, he would be off task approximately 10% of the workday.

AR 2178 (emphasis added).

As to the second RFC, which considered what Plaintiff's functionality would be absent the substance use, it is identical to the first RFC other than the 10% off-task behavior.  AR 2191–92. Plaintiff testified that he can't take any medications, that he is always vomiting or constipated, that he's had upwards of 30 gastroenterology and ER visits, that he uses the bathroom 8 to 12 times a day for 15 to 20 minutes each, that cyclical vomiting starts and persists upwards of 6-8 hours, that he has anxiety upon waking, that when he cannot keep anything down, including medication, his anxiety increases, that he has sudden needs for the bathroom and accidents occurring while in public,  that sleeping and lifting are significantly limited due to shoulder pain, that he cannot reach overhead or forward with his left extremity, nor can he do chores due to pain and fatigue, that he is socially isolated due to pain, that  he does not go out by himself, that he goes at most 3 months without marijuana, that  marijuana helped for a while and was the only way for him to eat and that his most recent 3-month period of abstinence was summer of 2022.  AR 2205–45

Again, with respect to Plaintiff's cannabis induced hyperemesis[7] and cyclical vomiting, the ALJ found that no commensurate 10% off task behavior limitation would be present if the substance use were not applicable.  AR 2191–92. In sum, this limitation was appropriately removed from the second RFC omitting limitations attributable to Plaintiff's substance use.  See 20 C.F.R 416.935.

Finally,  1- to the extent Plaintiff experienced other gastrointestinal disfunction, such as his sudden needs for the bathroom, this was reasonably accounted for in the RFC which specifies there must be a bathroom onsite; 2- With respect to Plaintiff's testimony concerning shoulder pain and difficulty reaching overhead or forward with his left extremity, this was reasonably accounted for in the RFC which specifies no more than occasional raising the left non-dominant upper extremity to shoulder level and never reach overhead on the left; and finally,  3-with respect to Plaintiff's testimony concerning pain-induced social isolation, the RFC reasonably accounts for this limitation by specifying that he cannot perform tandem tasks or teamwork, that he can only occasionally

[7] Cannabinoid hyperemesis syndrome (CHS) can affect people who use cannabis (marijuana) long-term. CHS causes frequent, severe nausea and vomiting. Hot baths and showers may temporarily relieve symptoms. But the only way to cure CHS is to stop using cannabis. https://my.clevelandclinic.org/health/diseases/21665-cannabis-hyperemesis-syndrome

interact with coworkers and supervisors and have no interaction with the public.

If there were other allegations or subjective complaints Plaintiff believes the ALJ missed, it was his burden to identify them, not that of the Court or Defendant.

## VII.   Recommendation

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, the recommendation is as follows:

1.     That Plaintiff's motion for summary judgment (Doc. 17) be **DENIED.**

2.     That Defendant's cross-motion (Doc. 21) be **GRANTED.**

3.     That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.     That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VIII.   Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case.  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 14, 2026**                         **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE